292 F.3d 1073
 Joan BARDEN; Susan Barnhill; Jeffrey Evans; Tony Martinez; Brenda Pickern; Jeff Thom; Suzanne Fitts Valters; Mitch Watkins, and all others similarly situated, Plaintiffs-Appellants,
v.
CITY OF SACRAMENTO; Mike Kashiwagi, Director of the Department of Public Works of the City of Sacramento, in his official capacity, Defendants-Appellees.
 No. 01-15744.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 12, 2002.
 Filed June 12, 2002.
 
 Laurence W. Paradis, Melissa W. Kasnitz, Disability Rights Advocates, Oakland, CA, for the plaintiffs-appellants.
 Gerald C. Hicks, Deputy City Attorney, Sacramento, CA, for the defendants-appellees.
 Kevin Russell, Department of Justice, Washington, DC, for amicus curiae United States of America.
 Gregory F. Hurley, Kutak Rock LLP, Newport Beach, CA, for amici curiae National League of Cities and 76 California cities.
 Janice M. Kroll, Munger, Tolles & Olson LLP, Los Angeles, CA, for amicus curiae Western Law Center for Disability Rights.
 Appeal from the United States District Court for the Eastern District of California, Milton L. Schwartz, District Judge, Presiding. D.C. No. CV 99-0497 MLS.
 Before HUG, CUDAHY,* and TASHIMA, Circuit Judges.
 OPINION
 TASHIMA, Circuit Judge.
 
 
 1
 We must decide whether public sidewalks in the City of Sacramento are a service, program, or activity of the City within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, or § 504 of the Rehabilitation Act, 29 U.S.C. § 794. We hold that they are and, accordingly, that the sidewalks are subject to program accessibility regulations promulgated in furtherance of these statutes. We therefore reverse the order of the district court and remand for further proceedings. We have jurisdiction pursuant to 28 U.S.C. § 1292(b).
 
 BACKGROUND
 
 2
 Appellants, various individuals with mobility and/or vision disabilities, commenced this class action against the City of Sacramento. Appellants alleged that the City violated the ADA and the Rehabilitation Act by failing to install curb ramps in newly-constructed or altered sidewalks and by failing to maintain existing sidewalks so as to ensure accessibility by persons with disabilities.[1] The parties stipulated to the entry of an injunction regarding the curb ramps; however, they did not reach agreement on the City's obligation to remove other barriers to side-walk accessibility, such as benches, sign posts, or wires.
 
 
 3
 The parties filed motions for summary judgment and summary adjudication on the issue of whether sidewalks are a service, program, or activity within the meaning of the ADA and are therefore subject to the program accessibility regulations, found at 28 C.F.R. §§ 35.149-35.151. The district court denied Appellants' motion for partial summary adjudication and granted in part the City's partial motion for summary judgment. It held that the public sidewalks in Sacramento are not a service, program, or activity of the City and, accordingly, are not subject to the program access requirements of either the ADA or the Rehabilitation Act. Because that holding obviated the need for trial,[2] the district court certified the issue for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), which we granted.
 
 STANDARD OF REVIEW
 
 4
 The interpretation of a statute is a question of law subject to de novo review. Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir.1999) ("BAART").
 
 DISCUSSION
 
 5
 Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[3] 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). One form of prohibited discrimination is the exclusion from a public entity's services, programs, or activities because of the inaccessibility of the entity's facility — thus, the program accessibility regulations at issue here.
 
 
 6
 The access requirements are set forth in 28 C.F.R. §§ 35.149-35.151.[4] Section 35.150 requires a public entity to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). The public entity is required to develop a transition plan for making structural changes to facilities in order to make its programs accessible. Id. at § 35.150(d)(1). The regulation also requires the transition plan to include a schedule for providing curb ramps to make pedestrian walkways accessible.[5] Id. at § 35.150(d)(2). Section 35.151 similarly requires newly-constructed or altered roads and walkways to contain curb ramps at intersections. 28 C.F.R. § 35.151(e).
 
 
 7
 The district court's order was based on its conclusion that sidewalks are not a service, program, or activity of the City. Rather than determining whether each function of a city can be characterized as a service, program, or activity for purposes of Title II, however, we have construed "the ADA's broad language [as] bring[ing] within its scope `anything a public entity does.'" Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir.2001) (quoting Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 171 (3d Cir.1997), aff'd, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998)); see also Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir.1998) (finding that "the phrase `services, programs, or activities' encompasses virtually everything that a public entity does"); Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 45 (2d Cir.1997) (reasoning that the phrase "programs, services, or activities" is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context"), superseded on other grounds, Zervos v. Verizon New York, Inc., 252 F.3d 163, 171 n. 7 (2d Cir.2001). Attempting to distinguish which public functions are services, programs, or activities, and which are not, would disintegrate into needless "hair-splitting arguments." Innovative Health Sys., 117 F.3d at 45. The focus of the inquiry, therefore, is not so much on whether a particular public function can technically be characterized as a service, program, or activity, but whether it is "`a normal function of a governmental entity.'" BAART, 179 F.3d at 731 (quoting Innovative Health Sys., 117 F.3d at 44). Thus, we have held that medical licensing is a service, program, or activity for purposes of Title II, Hason v. Med. Bd., 279 F.3d 1167, 1173 (9th Cir. 2002), as is zoning, BAART, 179 F.3d at 731, and parole hearings, Thompson v. Davis, 282 F.3d 780, 786-87 (9th Cir.2002). See also Johnson, 151 F.3d at 569-70 (reasoning that the word "`activities,' on its face, suggests great breadth and offers little basis to exclude any actions of a public entity," and thus holding that a contract to operate the city's public access cable station was an activity within the meaning of Title II); Innovative Health Sys., 117 F.3d at 44 (holding that the ADA and the Rehabilitation Act encompass zoning decisions because zoning is "a normal function of a governmental entity").
 
 
 8
 In keeping with our precedent, maintaining public sidewalks is a normal function of a city and "without a doubt something that the [City] `does.'" Hason, 279 F.3d at 1173. Maintaining their accessibility for individuals with disabilities therefore falls within the scope of Title II.
 
 
 9
 This broad construction of the phrase, "services, programs, or activities," is supported by the plain language of the Rehabilitation Act because, although the ADA does not define "services, programs, or activities," the Rehabilitation Act defines "program or activity" as "all of the operations of" a qualifying local government. 29 U.S.C. § 794(b)(1)(A). The legislative history of the ADA similarly supports construing the language generously, providing that Title II "essentially 8515 simply extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to all actions of state and local governments." H.R.Rep. No. 101-485(II), at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367 (emphasis added); see also id. at 151, reprinted in 1990 U.S.C.C.A.N. 303, 434 ("Title II ... makes all activities of State and local governments subject to the types of prohibitions against discrimination ... included in section 504....") (emphasis added). In fact, the ADA must be construed "broadly in order to effectively implement the ADA's fundamental purpose of `provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Hason, 279 F.3d at 1172 (quoting Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 861 (1st Cir.1998)) (alteration in the original).
 
 
 10
 Requiring the City to maintain its sidewalks so that they are accessible to individuals with disabilities is consistent with the tenor of § 35.150, which requires the provision of curb ramps, "giving priority to walkways serving" government offices, "transportation, places of public accommodation, and employers," but then "followed by walkways serving other areas." 28 C.F.R. § 35.150(d)(2). Section 35.150's requirement of curb ramps in all pedestrian walkways reveals a general concern for the accessibility of public sidewalks, as well as a recognition that sidewalks fall within the ADA's coverage, and would be meaningless if the sidewalks between the curb ramps were inaccessible.
 
 
 11
 Moreover, the conclusion that sidewalks are subject to the accessibility regulations is the position taken by the Department of Justice ("DOJ"), the agency responsible for issuing the regulations. See 42 U.S.C. § 12134 (requiring the Attorney General to promulgate regulations implementing § 12132). An agency's interpretation of its own regulation is entitled to deference when the language of the regulation is ambiguous and the interpretation is not plainly erroneous or inconsistent with the regulation. Auer v. Robbins, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); see also Alhambra Hosp. v. Thompson, 259 F.3d 1071, 1074 (9th Cir.2001) ("The `agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'") (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)). The regulation is ambiguous because, while it does not specifically address the accessibility of sidewalks, it does address curb ramps. The curb ramps, however, could not be covered unless the sidewalks themselves are covered. The DOJ's interpretation of its own regulation, that sidewalks are encompassed by the regulation, is not plainly erroneous or inconsistent with the regulation. We therefore defer to the interpretation of the DOJ under Auer.
 
 CONCLUSION
 
 12
 Title II's prohibition of discrimination in the provision of public services applies to the maintenance of public sidewalks, which is a normal function of a municipal entity. The legislative history of Title II indicates that all activities of local governments are subject to this prohibition of discrimination. This conclusion is also supported by the language of § 35.150, which requires the provision of curb ramps in order for sidewalks to be accessible to individuals with disabilities. The order of the district court accordingly is reversed and the case remanded for further proceedings.[6]
 
 
 13
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 Appellants also alleged violations of California law that are not at issue on this appeal
 
 
 [2]
 Appellants represented to the district court that a holding that sidewalks are not a service or program negated their theory of the case, and that they had no interest in litigating a case in which they would be required to identify "every other discrete public activity that goes on" at a facility in order to invoke the accessibility requirements
 
 
 [3]
 The City of Sacramento is a public entity for purposes of Title IISee 42 U.S.C. § 12131(1).
 
 
 [4]
 Section 35.149 is the general prohibition against discrimination, § 35.150 governs the accessibility of existing facilities, and § 35.151 governs the accessibility of new construction and alterations
 
 
 [5]
 The regulation provides:
 (2) If a public entity has responsibility or authority over streets, roads, or walkways, its transition plan shall include a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.
 
 
 [28]
 C.F.R. § 35.150(d)(2)
 
 
 [6]
 At trial, the City will have the opportunity to present evidence concerning any "undue financial and administrative burdens," pursuant to § 35.150(a)(3), an issue which it raises on this appeal, but which we do not address