RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

JAMES G. WOUDENBERG, dba R & R Research,

*Petitioner,*

*v.*

No. 14-3987

UNITED STATES DEPARTMENT OF AGRICULTURE, Health Inspector Service,

*Respondent.*

On Petition for Review of an Order of the
United States Department of Agriculture.
No. AWA 12-0538.

Argued: June 18, 2015

Decided and Filed: July 24, 2015

Before: ROGERS and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

―――――――――――

**COUNSEL**

**ARGUED:** Nancy L. Kahn, FOSTER SWIFT COLLINS & SMITH PC, Farmington Hills, Michigan, for Petitioner. Charles E. Spicknall, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondent **ON BRIEF:** Nancy L. Kahn, FOSTER SWIFT COLLINS & SMITH PC, Farmington Hills, Michigan, for Petitioner. Charles E. Spicknall, UNITED STATES DEPARTMENT OF AGRICULTURE, Washington, D.C., for Respondent

―――――――――――

[*]The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge.    According to Department of Agriculture regulations promulgated under the federal Animal Welfare Act (with certain exceptions not applicable here), persons who are in the business of buying and selling dogs and cats may not obtain dogs or cats from an individual donor "who did not breed and raise them on his or her premises."  9 C.F.R. §§ 1.1 and 2.132(a).    Another provision requires a dealer in such a case to "obtain[ ] a certification that the animals were born and raised on that person's premises."  9 C.F.R. § 2.132(d).  The question in this case is whether there is a violation when the dealer obtains the required certification, but the certification is false.  The regulatory language is clear that a dealer violates the law by obtaining a dog or cat from an individual donor who did not breed or raise it on the donor's premises, and it is still a violation even when the dealer in good faith obtained certifications that the animals had been so bred and raised.  The certification requirement is an enforcement mechanism for the prohibition, not an exception.  The Department of Agriculture therefore properly entered a cease-and-desist order against the petitioner.

Congress passed the Animal Welfare Act to ensure humane treatment of certain animals and to prevent stolen animals from being sold or otherwise used.  7 U.S.C. § 2131.  Pursuant to the Act, the United States Department of Agriculture (USDA) promulgated § 2.132, establishing certain requirements for obtaining animals.  Subsection (a) provides that class B animal dealers[1] may obtain live, random source dogs and cats only from:

———————————

[1]An animal "dealer" is:

>     any person who, in commerce, for compensation or profit, delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of: Any dog or other animal whether alive or dead (including unborn animals, organs, limbs, blood, serum, or other parts) for research, teaching, experimentation, exhibition, or for use as a pet; or any dog at the wholesale level for hunting, security, or breeding purposes.

9 C.F.R. § 1.1.  The term:

>     does not include a retail pet store []; any retail outlet where dogs are sold for hunting, breeding, or security purposes; or any person who does not sell or negotiate the purchase or sale of any wild or exotic animal, dog, or cat and who derives no more than $500 gross income from the sale of animals other than wild or exotic animals, dogs, or cats during any calendar year.

*Id.*  A class B dealer is any dealer "whose business includes the purchase or resale of any animal."  *Id.*

(1) Other dealers who are licensed under the Act and in accordance with the regulations in part 2;

(2) State, county, or city owned and operated animal pounds or shelters; and

(3) A legal entity organized and operated under the laws of the State in which it is located as an animal pound or shelter, such as a humane shelter or contract pound.

9 C.F.R. § 2.132(a). The regulations define "random source" with respect to dogs and cats to mean "dogs and cats obtained from animal pounds or shelters, auction sales, or from any person who did not breed and raise them on his or her premises." 9 C.F.R. § 1.1. Thus, when a class B dealer obtains a dog or cat from someone not listed in (a)(1)-(3), the animal must have been bred and raised on the donor's premises. Another subsection, 9 C.F.R. § 2.132(d), prohibits a dealer from knowingly obtaining any dog or cat from someone "not licensed, other than a pound or shelter" without a certification that the animals were born and raised on the donor's premises:

> No dealer or exhibitor shall knowingly obtain any dog or cat from any person who is not licensed, other than a pound or shelter, without obtaining a certification that the animals were born and raised on that person's premises . . . .

James Woudenberg is a class B animal dealer who sells animals to hospitals and universities for use in medical research. Some of the animals he sells are donated by individuals. Five such animal donations are at issue in this case: 1) a dog donated by Gilbert Beemer on April 18, 2008; 2) a second dog donated by Beemer on June 3, 2008; 3) a dog donated by Max Hawley on June 10, 2008; 4) a cat donated by Sandra Castle on August 28, 2008; and 5) a dog donated by Katherine Snyder on November 4, 2008.

Before accepting the dogs and cat from Beemer, Hawley, Castle, and Snyder, Woudenberg required each of them to complete a "personal animal release" form. The release form contained the following certification:

> *I Certify that I have bred, raised, and do own the animal(s) listed below, and I understand that they may be used in research or testing.*

Each donor completed the release form and signed the required certification before leaving the donated animals at Woudenberg's facility.

The Animal and Plant Health Inspection Service (APHIS), a USDA agency, subsequently reviewed Woudenberg's records and contacted the donors to verify that the donated animals were not, in fact, random source animals. The donors admitted to APHIS personnel that they had not raised the animals from birth and that the donated animals were owned previously by other persons. Based on the donors' statements, APHIS initiated this case against Woudenberg, alleging that he had obtained five live, random source animals from sources not permitted by § 2.132(a).

The administrative law judge (ALJ) assigned to the case dismissed APHIS's complaint. She reasoned that, because the donors "did not sell their animals to [Woudenberg]," they did not "meet the definition of dealers under the Act." A.R. 33. Because the donors were not "dealers" for purposes of the Act, the ALJ concluded, "[Woudenberg's] acceptance of their animals did not violate 9 C.F.R. § 2.132(a)." *Id.* The ALJ further determined that Woudenberg had not violated § 2.132(d), because he had "knowingly obtained certifications from each of the donors herein, which represented that the owners had bred and raised the donated animals on their premises." *Id.* That the donors had made false statements on their certifications was immaterial, the ALJ found, because "[t]he regulations do not hold dealers strictly liable for false statements made by donors on certifications that the donors signed, or caused to be signed on their behalf." *Id.* at 34.

On appeal, a USDA judicial officer (J.O.) reversed the ALJ's decision. With respect to § 2.132, the J.O. reasoned as follows:

> The donors in question were not licensed under the [Act] and were not required to be licensed under the [Act]. Mr. Woudenberg obtained the necessary certification from each donor that his or her donated animal was bred and raised by the donor. While each of the completed and signed certifications was false, I find very little evidence that Mr. Woudenberg knew or should have known that the certifications provided by [the donors] were false. Further, the evidence establishes that Mr. Woudenberg took precautions to verify the accuracy of the certifications prior to accepting the animals in question. Under the circumstances established in this proceeding, I find Mr. Woudenberg complied with 9 C.F.R. § 2.132(d), even though each certification was false.
>
> However, Mr. Woudenberg's compliance with 9 C.F.R. § 2.132(d) does not negate Mr. Woudenberg's violation of 9 C.F.R. § 2.132(a). Compliance with 9 C.F.R. § 2.132(d) only requires that a dealer obtain a certification from the person surrendering the animal that the animal was born and raised on that person's premises, namely, a certification that the animal is not a random source

animal. In other words, it is possible, as occurred in this proceeding, for a dealer to obtain a random source animal from a person who falsely or mistakenly certifies that the animal is not a random source animal and to [thereby] comply with 9 C.F.R. § 2.132(d). However, if the person from whom the class "B" dealer obtains that random source animal is not a permitted source of random source animals under 9 C.F.R. § 2.132(a), the dealer is in violation of 9 C.F.R. § 2.132(a), despite having complied with 9 C.F.R. § 2.132(d).

*Id.* at 45–46. The J.O. explicitly based his conclusion regarding the relationship between §§ 2.132(a) and (d) on the definition of "random source" from § 1.1. *Id.* at 45.

Although the J.O. found that Woudenberg had violated § 2.132(a), the J.O. determined that there was no need to assess a civil penalty or revoke Woudenberg's license, since the record showed Woudenberg had made a good-faith effort to comply with the statute. *Id.* at 53. Accordingly, the J.O. issued an order simply directing Woudenberg "to cease and desist from violations of the Animal Welfare Act and the Regulations." *Id.* at 58–59.

Woudenberg petitions for review of the J.O.'s order, arguing that, in construing § 2.132(a), the J.O. improperly disregarded the language of § 2.132(d). According to Woudenberg, § 2.132(d) can only be read as creating an exception to strict liability under § 2.132(a) for class B dealers who inadvertently acquire random source dogs and cats while complying with the requirements of § 2.132(d). The USDA responds that the J.O. correctly concluded that nothing in § 2.132(d) changes the fact that Class B dealers violate §§ 2.132(a) and 1.1 together by taking donation of dogs or cats not raised and bred by the donor from sources not listed in § 2.132(a), even if the certification requirement has been met.

The J.O. properly construed § 2.132(a). Section § 2.132(a) provides that class B dealers may "only" obtain live, random source dogs and cats from sources listed in § 2.132(a)(1)–(3). The regulations also explicitly define a "random source" dog or cat. The definition they supply—"dogs and cats obtained from animal pounds or shelters, auction sales, or from any person who did not breed and raise them on his or her premises," 9 C.F.R. § 1.1—does not depend on what the person acquiring the dog or cat claims to have believed about the animal's origins. The J.O. appropriately relied on this definition as the basis for his decision, reasoning that adopting Woudenberg's interpretation would, in effect, "add a permitted source of live

random source dogs and cats to those permitted sources listed in 9 C.F.R. § 2.132(a)(1)-(3)."
A.R. 45.

Woudenberg argues that § 2.132(d) requires the conclusion that there is no violation under § 2.132(a) when class B dealers—like him—unknowingly acquire random source dogs and cats while complying with the certification requirement of § 2.132(d). The words of the regulation, however, do not say this. Instead, there is a requirement—do not obtain the dog or cat from someone on whose premises it was not born and raised—and an enforcement mechanism: obtain a certificate that serves the dual purposes of providing a basis for USDA to check whether there has been a violation, and in general lessening the likelihood of violations.

The AWA and regulations permit a J.O. to take into account the degree to which a dealer has tried to comply with the regulation by lessening the penalty where the dealer's compliance efforts have been in good faith. For instance, the AWA expressly provides that, in calculating civil penalties to be assessed for violations of the AWA and regulations, the USDA must consider, *inter alia*, "the [violator's] good faith, and the history of previous violations." 7 U.S.C. § 2149(b). Thus, a J.O. need not ignore the extent to which an animal dealer like Woudenberg tried to comply with the law's requirements. Here, for example, the J.O. found that:

> The record establishes that Mr. Woudenberg made a good faith attempt to comply with 9 C.F.R. § 2.132. . . . Mr. Woudenberg did not know or have reason to know that [the donors] falsely certified the animals they donated to Mr. Woudenberg were not random source animals. Moreover, Mr. Woudenberg took precautions to ensure that the certifications were accurate. Therefore, I conclude Mr. Woudenberg's violations of 9 C.F.R. § 2.132(a) were not intentional and did not result from Mr. Woudenberg's careless disregard of regulatory requirements.

A.R. 52–53. Based on those findings, the J.O. limited the sanction in this case to a cease-and-desist order and expressly declined to assess a civil penalty or revoke Woudenberg's AWA license. *Id.* at 53. The absence of a certification defense under § 2.132(a) thus does not eliminate any distinction under the AWA between people who seek to comply with the Act and people who deliberately violate it.

The certification requirement by its terms serves to further the enforcement of the underlying obligation, and does not by its terms constitute an exception, contrary to Woudenberg's argument. The situation is similar to one in which a state prohibits the sale of

liquor to a minor. Compliance with the additional requirement that young customers show IDs does not serve as a defense under some state's schemes, but instead serves as an additional enforcement mechanism. The certification requirement in this case works the same way.

The history of § 2.132 is fully consistent with this interpretation. As originally drafted, § 2.132 provided, in pertinent part, that:

> (a) A class "B" dealer may obtain live random source dogs and cats only from:
>
>> (1) Other dealers who are licensed under the Act and in accordance with the regulations in part 2;
>>
>> (2) State, county, or city owned and operated pounds or shelters; and
>>
>> (3) A legal entity organized and operated under the laws of the State in which it is located as an animal pound or shelter, such as a humane shelter or contract pound.
>
> (b) A class "B" dealer shall not obtain live random source dogs and cats from individuals who have not bred and raised the dogs and cats on their own premises.

*See* 54 Fed. Reg. 36123-01, 36162 (Aug. 31, 1989). The USDA amended § 2.132 in 2004. *See* 69 Fed. Reg. 42089-01 (July 14, 2004). The USDA deleted old § 2.132(b) on the ground that it was redundant in light of § 1.1, which already excluded from the definition of "random source dogs and cats" those obtained "from any person who did not breed and raise them on his or her premises." Thus in proposing the removal of paragraph (b), the agency explained that paragraph (b) was "unnecessary." 65 Fed. Reg. 47908, 47912 (Aug. 4, 2000). The USDA on promulgation of the final regulation rejected a commenter's suggestion that the old § 2.132(b) be retained. The USDA reasoned that "The definition of 'random source' animals may be found in § 1.1 of the regulations." 69 Fed. Reg. at 42096. This makes it clear that the elimination of paragraph (b) was not intended to change the elements of a violation, and that § 2.132(d), discussed next, did not somehow "replace" the old § 2132(b), as argued by Woudenberg.

The 2004 amendments also added the current version of § 2.132(d). The USDA in proposing the amendment explained:

> [W]e have found that some dealers have knowingly obtained animals from persons who are required to hold a valid and effective license and do not. Therefore, we are proposing to add a new paragraph (d) to § 2.132 to prohibit a Class B dealer or exhibitor from knowingly obtaining dogs, cats, and other

*animals from persons who are required to hold a current, valid, and unsuspended license and do not. The new paragraph would also require that, when dogs or cats are acquired from persons who are not licensed, a certification must be obtained from the person specifying that he or she is within one of the exemptions to the license requirements (i.e., that the dogs or cats were born and raised on their premises and that, for animals for research purposes, they have sold fewer than 25 that year; or, for use as pets, that they maintain no more than three breeding females). We believe this would help prevent licensed dealers from supporting the operations of unlicensed dealers who are acting in violation of the [Act].*

65 Fed. Reg. at 47912 (emphasis added). Nothing in the USDA's explanation suggests that the USDA intended § 2.132(d) to relax the requirements imposed by §§ 2.132(a) and 1.1. Indeed, the USDA did not even mention §§ 2.132(a) or 1.1 while explaining the purpose and effect of § 2.132(d). Instead, the USDA made clear that § 2.132(d) was intended to help prevent all dealers from doing business with animal sellers who should have been, but were not, licensed under the Act. *Id.* That purpose does not appear to be to ease the § 2.132 obligations of dealers, but instead to improve compliance with the existing requirement.

Responses to comments from the comment period of the amendment support rather than undermine this conclusion. In response to comments that recommended that the certification requirements be more extensive, or require additional information, the agency expressed its belief that the regulations as amended are "adequate for purposes of the AWA to establish ownership of animals." 69 Fed. Reg. at 42096. As part of its required regulatory flexibility analysis regarding the economic effect of the rule change on small entities, the agency determined that the economic effect on class B dealers should be small because the "rule requires little added time or effort on the part of the dealer." *Id.* at 42098. Neither of these responses suggests that the amendment adding the certification requirement somehow created a safe harbor for dealers obtaining animals that were random source but certified not to be random source.

For the foregoing reasons, the J.O.'s interpretation of § 2.132 is correct. Even were there some question on that point, moreover, this court owes substantial deference to the agency's interpretation of its own regulations, *see Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994), and may not reject such an interpretation "unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *see also*

*Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Talk America, Inc. v. Mich. Bell Tel. Co.*, 131 S. Ct. 2254, 2260–61 (2011).   The J.O.'s interpretation was doubtless a reasonable one and is, accordingly, entitled to substantial deference from this court.

The petition for review is denied.