ROGERS, Circuit Judge,
concurring.
CONCURRENCE
I concur in the result and in much but not all of the majority’s reasoning.
Affirmance is required by an examination of the language of two regulations implementing Title II of the ADA: 28 C.F.R. § 35.150, the regulation that applies to “existing facilities,” and 28 C:F.R. § 35.151, the regulation that applies to “new construction and alterations.” Although the existing-facilities regulation does so more strongly, both regulations suggest that — at least where a building or similar structure is involved — a service is something that is housed within the building. Babcock’s claim fails on the basis that Babcock has identified neither what areas of Cadillac Place have been renovated nor what services she intends to access. This conclusion is required even if the dissenting opinion in Frame v. City of Arlington, 657 F.3d 215, 250 (5th Cir.2011) (en banc) (Jolly, J., dissenting), went too far in concluding that sidewalks do not qualify as services under 42 U.S.C. § 12132 and the implementing regulations.
“Title II’s implementing regulations distinguish between newly constructed or altered facilities ... and existing facilities .... ” Daubert v. Lindsay Unified Sch. Dist., 760 F.3d 982, 985 (9th Cir.2014). The regulation addressing existing facilities, 28 C.F.R. § 35.150, suggests a difference between services and the buildings that contain services. As the Supreme *542 Court has recognized, “in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services.” Tennessee v. Lane, 541 U.S. 509, 532, 124 S.Ct. 1978 (2004) (emphasis added) (citing 28 C.F.R. § 35.150(b)(1)). The Court’s reasoning was based on the existing-facilities regulation, which provides that a public entity is not “[n]ecessarily require[d] ... to make each of its existing facilities accessible to and usable by individuals with disabilities,” as long as the disabled person is still able to access the relevant service, program, or activity. 28 C.F.R. § 35.150(a)(1); see also id. § 35.150(b)(1). This distinction between services and the buildings that house the services is further illustrated by examples such as the following in the Justice Department’s Technical Assistance Manual, which elaborates on the implementation of Title II:
ILLUSTRATION 1: When a city holds a public meeting in an existing building, it must provide ready access to, and use of, the meeting facilities to individuals with disabilities. The city is not required to make all areas in the building accessible, as long as the meeting room is accessible. Accessible telephones and bathrooms should also be provided where these services are available for use of meeting attendees.
U.S. Dep’t of Justice, The Americans with Disabilities Act: Title II Technical Assistance Manual II-5.1000 (1993), available at http://www.ada.gov/taman2.html. In sum, the existing-facilities regulation indicates that the design features of an existing building do not qualify as a service.
This conclusion is more difficult to square with the regulation addressing new construction and alterations, 28 C.F.R. § 35.151. That regulation provides that newly built facilities must be “readily accessible to and usable by individuals with disabilities,” and that newly altered facilities must satisfy the same standard “to the maximum extent feasible.” Id. § 35.151(a)(1), (b)(1). The “readily accessible and usable” standard requires a facility to “be designed, constructed, or altered in strict compliance with a design standard.” Title II Technical Assistance Manual II — 6.1000; see also Lane, 541 U.S. at 532, 124 S.Ct. 1978 (citing § 35.151(c)). The regulation’s “readily accessible and usable” requirement, in addition, extends to the “path of travel” to altered areas. 28 C.F.R. § 35.151(b)(4). The definition of path of travel includes many of the design features in a building, including “walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors, rooms, and other improved areas; parking access aisles; elevators and lifts[; and] restrooms, telephones, and drinking fountains.” Id. § 35.151(b)(4)(ii)(A)-(B). The regulation thus applies to many of the design features that Babcock identifies. This regulation does not appear to allow relocating services, programs, or activities, instead requiring strict compliance with building specifications when a public entity alters an existing building or constructs a new one.
The statutory and regulatory scheme can hardly be construed such that services and the existing facilities, but are not mutually exclusive for purposes of the regulation addressing new construction and alterations. It follows that services and a building’s design features are mutually exclusive even with regard to the new-construction regulation, and that the design features of a building are not services. *543 Nonetheless, where a public entity remodels a building and triggers the new-construction requirements, § 35.151 appears to prohibit that entity from reassigning the services, programs, and activities within the building to another part of the building or to a different site. In other words, where § 35.151 applies, the list of services within a building has not necessarily expanded, but the duties imposed on the public entity have.
Babcock’s complaint fails to state a claim because she has not alleged what parts of Cadillac Place have undergone renovations that would trigger § 35.151, and she has not identified the services, programs, or activities that she intends to access. It is true that in Ability Center of Greater Toledo v. City of Sandusky, 385 F.3d 901, 913 (6th Cir.2004), we held that § 35.151 provides a private right of action against defendants who do not comply with that regulation’s requirements. Nothing in this analysis questions that proposition. In short, Babcock’s complaint does not identify any service, program, or activity that 42 U.S.C. § 12132 aims to protect. Thus, even if § 35.151 requires that certain design features of the building here conform to specific architectural requirements, Babcock’s complaint does not state a claim. On this basis, the majority opinion is correct.
While the majority relies substantially on the reasoning of the Frame dissent, the majority in this case carefully notes ways in which the case of sidewalks may be different from the building designs before us. Ante, at 538 n. 5. Our decision today thus does not necessarily control a future case involving sidewalks. There is some room for the possibility that sidewalks may qualify as services even if the design features of a building do not. A city’s sidewalks are more critical to the everyday transportation needs of the general public than are the design features of a specific building. The conclusion that sidewalks may qualify as a service is supported by a 2004 decision from this court, a Title II implementing regulation, and the Justice Department’s amicus briefs in several sidewalk cases. Our judgment today does not resolve the question.
First, the Frame dissent may be in some tension with Ability Center. We suggested in not install curb cuts and ramps in those sidewalks. Ability Ctr., 385 F.3d at 904. Although we did not hold that a sidewalk or curb cut is a service within the meaning of 42 U.S.C. § 12132, we acknowledged that the public entities in that case “d[id] not dispute the district court’s finding that they [violated] § 35.151” by failing to install sidewalks throughout the city that were accessible to the disabled. Ability Ctr., 385 F.3d at 904. Nothing in the opinion cast doubt on the fact that a city’s failure to properly construct sidewalks violates 28 C.F.R. § 35.151 and 42 U.S.C. § 12132. Also supporting the view that a sidewalk may qualify as a service is a provision in the existing-facilities regulation. That provision states that public entities should “provid[e] curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including' State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas.” 28 C.F.R. § 35.150(d)(2) (emphasis added). This provision suggests that a public entity has a duty to install curb ramps in all sidewalks, even if the sidewalk does not serve as a “gateway” to another governmental service,- program, or activity. As the Ninth Circuit has put it, “Section 35.150’s requirement of curb ramps in all pedestrian walkways reveals a general concern for the accessibility of public sidewalks.” Barden v. City of Sacramento, *544 292 F.3d 1073, 1077 (9th Cir.2002) (emphasis added). Finally; in two cases addressing the question of whether a sidewalk is a service, the Justice Department has submitted briefs arguing that a sidewalk is a service under 42 U.S.C. § 12132 and the Justice-Department regulations. See Brief for the United States as Amicus Curiae Supporting Appellants’ Petition for Rehearing En Banc, Frame v. City of Arlington, 657 F.3d 215 (5th Cir.2010) (en banc) (No. 08-10630), 2010 WL 5306469; Brief for the United States as Amicus Curiae in Support of Appellants, Barden v. City of Sacramento, 292 F.3d 1073 (9th Cir.2002) (No. 01-15744), 2001 WL 34095025. The agency’s interpretation of its own regulations is entitled to substantial deference. Woudenberg v. U.S. Dep’t of Agric., 794 F.3d 595, 601 (6th Cir.2015).
The Justice Department amicus briefs indicate that there are distinctions between sidewalks and building design features. First, the existing-facilities regulation, 28 C.F.R. § 35.150(d)(2), contemplates that sidewalks may require curb ramps and other sloped areas even if the sidewalks do not lead to a public office or other building. There is no analogous provision regarding design features in a building. More significantly, in characterizing sidewalks as services, the Justice Department has relied in part on several particular aspects of sidewalks, including the fact that “sidewalks have been used for the purpose of public association and speech,” that sidewalks “permit the public ... to stay clear of road traffic,” and that sidewalks permit the public to access shops, businesses, and public transportation. Brief for the United States as Amicus Curiae Supporting Appellants’ Petition for Rehearing En Banc, Frame, 657 F.3d 215 (No. 08-10630), 2001 WL 34095025 at *4. At least some of these considerations arguably do not apply to design features in a building.