RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0027p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JILL BABCOCK,

               *Plaintiff-Appellant,*

    *v.*

                             No. 14-1816

STATE OF MICHIGAN; MICHIGAN STRATEGIC FUND,

               *Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-13010—Marianne O. Battani, District Judge.

Argued: October 6, 2015

Decided and Filed: February 5, 2016

Before: KEITH, ROGERS, and GRIFFIN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Ali W. Charara, THE SAM BERNSTEIN LAW FIRM, PLLC, Farmington Hills, Michigan, for Appellant. Gary L. Grant, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees. **ON BRIEF:** Ali W. Charara, THE SAM BERNSTEIN LAW FIRM, PLLC, Farmington Hills, Michigan, for Appellant. Gary L. Grant, Christina M. Grossi, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

    GRIFFIN, J., delivered the opinion of the court in which KEITH, J., joined, and ROGERS, J., joined in part. ROGERS, J. (pp. 15–19), delivered a separate opinion concurring in the result.

1

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.  Cadillac Place (formerly the General Motors Building) is an office complex in Detroit that is home to various state offices, a Michigan court of appeals, a restaurant, a gift store, and even a barber shop.  The building is owned by defendant Michigan Strategic Fund, a public entity, and leased by defendant State of Michigan.  Plaintiff Jill Babcock is an attorney who worked in Cadillac Place.  She alleges that various design features of Cadillac Place denied her equal access to her place of employment in violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.  We affirm the district court's dismissal of plaintiff's claims because she has not identified a service, program, or activity of a public entity from which she was excluded or denied a benefit.

I.

Babcock worked at the Michigan Economic Development Corporation's office in Cadillac Place.  She is disabled due to Friedreich's Ataxia, a degenerative neuromuscular disorder that impairs her ability to walk.  Her complaint states that she "wishes to exercise her right of access to her place of employment without fear of injury, embarrassment, and unnecessary frustration."  She identifies several design features that she alleges deny her "equal access to Cadillac Place," such as the slope of ramps at building entrances and the lack of handrails at entrances.[1]  She seeks injunctive and declaratory relief.

_____

[1]Plaintiff alleges the following violations:
   a.  Failure to provide adequate parking for the disabled in parking areas operated and/or controlled by the defendants.
   b.  Failure to protect or prevent the obstruction of curb ramps by illegally parked, state-owned vehicles.
   c.  Failure to comply with ADAAG requirements regarding the slope of ramps positioned at the accessible entrances of the building.
   d.  Failure to provide handrails at accessible entries.
   e.  Failure to provide adequate timing and an adequate floor plan in order to allow disabled individuals an opportunity to safely board elevators.
   f.  Failure to provide interior doorways with the necessary hardware and opening force to allow access by disabled individuals.
   g.  Failure to slope the changes of level greater than one-quarter of an inch at the entrances to the restrooms.

Observing that Babcock had not identified a public service, program, or activity from which she was excluded or denied a benefit, the district court granted defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim. First, it held that Babcock's ADA claim was barred by Eleventh Amendment sovereign immunity, and second, it ruled that Babcock had failed to allege a violation of the Rehabilitation Act. The district court also denied as futile Babcock's oral motion for leave to amend her complaint to add individual defendants acting in their official capacities. Babcock appeals.

II.

First, we must determine whether Babcock's ADA claim is barred by Eleventh Amendment sovereign immunity. As part of this analysis, we consider whether Babcock has identified conduct that violates the ADA. We conclude that she has not because she has failed to identify any "services, programs, or activities" of a public entity from which she was excluded or denied a benefit. Similarly, with respect to the Rehabilitation Act, we ask whether Babcock has identified a "program or activity" from which she was excluded or denied a benefit. Again, we conclude that she has not.

A.

Whether Eleventh Amendment sovereign immunity exists in a given case is a question of constitutional law that we review de novo. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states. *See, e.g.*, *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Id.*[2]

---

[2]In some circumstances, state entities like the Michigan Strategic Fund may invoke Eleventh Amendment sovereign immunity. *See Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 400−01 (1979)

Congress may abrogate the states' Eleventh Amendment sovereign immunity pursuant to the enforcement provisions of § 5 of the Fourteenth Amendment when Congress both "unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).[3]  In other words, the ADA only applies to the states to the extent that the statute is enacted pursuant to a valid grant of Congress's authority.

Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA.  42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); *see Carten v. Kent State Univ.*, 282 F.3d 391, 394 (6th Cir. 2002).  But the Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim.  *See Garrett*, 531 U.S. at 374 (Title I claim barred where there was no pattern of discrimination by the states and the remedy imposed by Congress was not congruent and proportional to the targeted violation); *Tennessee v. Lane*, 541 U.S. 509, 533−34 (2004) (Title II claim alleging denial of "the fundamental right of access to the courts" not barred); *United States v. Georgia*, 546 U.S. 151, 159 (2006) (Title II claim not barred to the extent that the ADA-violating conduct also violates the Fourteenth Amendment).  Our court has also clarified that an alleged violation of the Equal Protection Clause based on heightened scrutiny as a member of a suspect class, as opposed to an alleged Due Process Clause violation, cannot serve as a basis for Title II liability.  *See Popovich v. Cuyahoga Cty. Court of Common Pleas, Domestic Relations Div.*, 276 F.3d 808, 812 (6th Cir. 2002) (en banc); *Mingus v. Butler*, 591 F.3d 474, 483 (6th Cir. 2010) (distinguishing between equal protection claims based on heightened scrutiny as a member

---

("It is true, of course, that some agencies exercising state power have been permitted to invoke the [Eleventh] Amendment in order to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the State itself.")  Babcock alleges that the Michigan Strategic Fund is an "agency of the State of Michigan," which defendants do not dispute.

[3]Section 1 of the Fourteenth Amendment provides, in relevant part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1. Section 5 grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting "appropriate legislation."  *Id.* § 5; *see Garrett*, 531 U.S. at 365.

of a suspect class and challenges under rational basis review for purposes of sovereign immunity).

To guide the lower courts in assessing whether the Eleventh Amendment proscribes an ADA Title II claim, the Supreme Court has set forth a three-part test:

> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159; *see Mingus*, 591 F.3d at 482.

The first step in the Eleventh Amendment analysis is to determine which aspects, if any, of defendants' alleged conduct violated Title II. ADA Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendants maintain that no conduct violated Title II because Babcock's complaint fails to name a public service, program, or activity from which she was excluded or denied benefits. Babcock responds that her exclusion from equal access to Cadillac Place is sufficient to violate Title II. We interpret her position as arguing that the design features identified in her complaint, such as the slope of ramps and lack of handrails, are services, programs, or activities for purposes of the ADA Title II. But because there is a distinction between access to a specific facility and access to a public service, program, or activity under Title II's private cause of action, Babcock has not identified conduct that violates Title II for purposes of overcoming Eleventh Amendment sovereign immunity.

As an initial matter, a recent decision by the U.S. Supreme Court confirms that the focus of Title II is access to services, programs, and activities. In *San Francisco v. Sheehan*, the Court confronted the question of whether the ADA governs the manner in which an individual with a disability is arrested. 135 S. Ct. 1765, 1773 (2015). "The relevant provision provides that a public entity may not 'exclude' a qualified individual with a disability from 'participating in' and may not 'deny' that individual the 'benefits of, the services, programs, or activities of a public

entity.'" *Id.* (quoting 42 U.S.C. § 12132) (brackets omitted). "This language would apply to an arrest *if an arrest is an 'activity' in which the arrestee 'participates' or from which the arrestee may 'benefit.'" *Id.* (brackets omitted) (emphasis added). Ultimately, the Court assumed, without deciding, that the ADA applies to such arrests. *Id.* Nonetheless, the Court's approach confirms that Title II's private right of action is specifically intended to remedy interference with a disabled individual's participation in, or benefitting from, a public service, program, or activity. *See id.*; *see also Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) ("[T]he discrimination referenced in the statute must relate to services, programs, or activities[.]").

We thus consider whether the alleged design defects of Cadillac Place constitute services, programs, or activities for purposes of a private cause of action under Title II. Our review of the federal regulations promulgating the ADA reveals a distinction between services, programs, or activities and the facilities in which they are administered.[4] For instance, regulations for construction and alteration of structures differentiate between a facility and an activity conducted in that facility. *See* 28 C.F.R. § 35.149 (no disabled individual "shall, because a public entity's *facilities* are inaccessible . . . or unusable . . . be excluded from participation in, or be denied the benefits of the *services, programs, or activities* of a public entity.") (emphasis added); *see also* 28 C.F.R. § 35.151(b)(4)(i) ("A 'primary function' is a major activity for which the *facility* is intended. Areas that contain a primary function include . . . work areas in which the *activities* of the public entity using the *facility* are carried out.") (emphasis added). Moreover, ADA regulations addressing existing facilities provide that a public entity may comply with the ADA without altering a structure, such as by "reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites . . . or any other methods that result in making its services, programs, or activities readily accessible." 28 C.F.R. § 35.150(b); *see also* 28 C.F.R. § 39.150(a)(1) (noting that programs or activities must be "readily accessible to and usable by handicapped persons," but it is not "necessarily require[d that] the agency make each of its existing facilities accessible to and

---

[4]Congress has expressly delegated to the Attorney General the task of developing regulations to implement Title II. *Johnson*, 151 F.3d at 570. "[T]hese regulations are entitled to 'controlling weight, unless they are arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843−44 (1984)). We may look to these regulations as an aid to determine the scope of the term "services." *See id.*

usable by handicapped persons."). These regulations strongly suggest that a private cause of action exists to remedy the exclusion from participating in or deriving benefit from public services, programs, or activities, but not remedy the lack of certain design features of a facility. This is not to suggest that the ADA does not extend to the alleged design defects of Cadillac Place, but merely that plaintiff may not remedy them through private action without alleging interference with a service, program, or activity.

Decisions in at least three sister circuits support defendants' position that public facilities are distinguishable from services, programs, or activities of a public entity. *See Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001) (distinguishing between facilities and services by explaining that public entities may comply with the ADA by relocating services, programs, and activities from inaccessible to accessible facilities); *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6−7 (1st Cir. 2000) ("Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available."); *Layton v. Elder*, 143 F.3d 469, 473 (8th Cir. 1998) (distinguishing between a courthouse and the services, programs, and activities administered in the courthouse). These decisions are consistent with our view that facility accessibility is not, standing alone, a cognizable claim under Title II's private right of action; rather, the inquiry is tied to whether that facility's inaccessibility interferes with access to public services, programs, or activities.

We recognize that an en banc panel of the Fifth Circuit, which considered the similar issue of whether individuals with disabilities have a private right of action to enforce Title II with respect to public sidewalks, came to a different conclusion. In *Frame v. City of Arlington*, a split en banc court held that a sidewalk was a "service" within the meaning of Title II. 657 F.3d 215, 221 (5th Cir. 2011). But seven judges disagreed with that holding. *Id.* at 240 (Jolly, J., dissenting in part and concurring in part). We find the dissent to have the better view of the case. As the dissent explained,

> [i]n the light of the statute and regulations, there is no mandate for accessibility to facilities; on the other hand, there is the express mandate of the statute and regulations to universal accessibility of services, programs, and activities. Stated

> differently, facilities are specifically excluded from the access demands of the private cause of action provided in Section 12132.

*Id.* at 242. It elaborated that, although Title II "does not explicitly define the term 'services,' the statute makes a few suggestions to aid our interpretation of the term." *Id.* at 243. First, Title II defines a "qualified individual with a disability" as a person "who, *with or without* . . . the removal of *architectural* . . . or *transportation* barriers . . . meets the essential eligibility requirements for the *receipt of services or the participation in programs or activities*." *Id.* (quoting 42 U.S.C. § 12131(2)). Thus, the dissent explained, the statute defines what "services" are by reference to what they are not: "Obviously, the noncompliant sidewalks are alleged by the plaintiffs to be barriers to transportation for the wheelchair disabled. Consequently, it is plain that transportation barriers are treated as barriers to accessing a service, and that sidewalks are not classified as a service." *Id.* Second, the dissent explained that it was "not alone in reaching the conclusion that transportation barriers are distinguishable from services," because the Supreme Court "ha[d] held that the necessary implication of Section 12131(2) is that in some circumstances, local governments must 'remove architectural and other barriers to [the] accessibility [of judicial services].'" *Id.* (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)) (brackets in original). In other words, "if transportation barriers, i.e. facilities, and services are coextensive . . . the ADA requires local governments to 'remove' services, i.e. transportation barriers, so that disabled individuals will have access to services. This is the nonsensical reading that follows . . . ; we should strive to avoid such absurdity." *Id.* Thus, the dissent concluded that although the ADA does not define "services," the ADA does indicate that "a service is not an inaccessible sidewalk, which is instead treated as a facility that is a *barrier* to access of a public service." *Id.* at 243−44.

The en banc dissent in *Frame* further observed that Congress included "facilities" accessibility in Part B of Title II, 42 U.S.C. §§ 12146, 12147, but omitted it from Part A, *id.* § 12132. Specifically, it noted that the ADA explicitly requires certain facilities to be accessible "in (and only in) the *unique context* of 'designated public transportation services.'" *Id.* at 244 (citing 42 U.S.C. 12141(2)). "Given that the statute requires that facilities be accessible to disabled individuals only in this limited context, it is plain that . . . facilities are not merely a subset of services." *Id.* (internal quotation marks omitted). "Again, the primary implication of

Sections 12146 and 12147 is that facilities need only be made equally accessible *in the specific and limited context* of 'designated public transit services.' Thus, because facilities are not subject to the universal equal accessibility requirement, they are not . . . enfolded with the term services." *Id.* (emphasis in original). This strongly suggests that Congress intentionally omitted the term "facilities" from enforcement by private action under § 12132. *Id.* "Congress could easily have expressed its intent to prohibit local governments from denying disabled individuals equal access to *all* 'facilities, services, programs, or activities.' It did not. Instead, it required that local governments make their facilities accessible only in the context of transportation services." *Id.* at 245. "Thus, the ADA, without explicitly defining the term services, identifies two things that a service is not: a transportation barrier and a facility. Applying those distinctions here, . . . a noncompliant sidewalk is a transportation barrier and . . . sidewalks in general[] are—like other static, inanimate, immobile infrastructure—facilities." *Id.*

The en banc dissent went on to discuss the aforementioned ADA-promulgating regulations, highlighting the distinction they draw between facilities and services, programs, or activities. *See id.* at 245−46 (citing 28 C.F.R. §§ 35.130, 35.149, 35.150, 35.151). "The clear mandate of the ADA is the unequivocal right to access to services, programs, and activities, and Congress required that the regulations clarify that this private right of action to demand access does not extend to facilities, a term not mentioned in § 12132." *Id.* at 247−48. Moreover, "the Supreme Court has placed particular emphasis on the flexibility granted to local governments under the regulations, saying that 'a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites . . . to assist persons with disabilities in accessing services.'" *Id.* at 248.

We find the dissent's interpretation of Title II compelling and adopt it in analyzing Babcock's claims.[5] In this case, Babcock's principal ADA argument is that she has a private

---

[5]The Fifth Circuit's majority opinion rests on two alternative grounds. First, the act of building or altering public sidewalks is a "service." Babcock does not advance such an argument with respect to the alleged design defects of Cadillac Place, so we need not address it. The second ground is the majority's conclusion that "services" encompasses the sidewalks themselves under the plain meaning of the statute. *Id.* at 225−28. Relying on the Supreme Court's use of the term "services" and various dictionary definitions, the *Frame* majority emphasized that the public has a "*general* demand" for "safe transportation," *id.* at 226−27 (emphasis added), and so a "sidewalk" qualifies as a "service." That reasoning is inapplicable here. In this case, we face the question of whether certain design features in a building—for example handrails at entrances—qualify as a "service." Those design features do

right of action under Title II because Cadillac Place is inaccessible due to its design defects, and that allegation is "alone sufficient to properly plead a Title II claim." We cannot agree. Despite that she was on notice of defendants' position, she has not identified a service, program, or activity of a public entity in Cadillac Place that she seeks to access.[6] She only identifies facilities-related issues. *See* 28 C.F.R. § 35.104 ("Facility means all or any portion of buildings, structures, sites, complexes, equipment . . . roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."). Because she simply maintains that the facility's inaccessibility violates Title II, her claim fails.[7]

In response to defendants' position that her Title II claim is barred by the Eleventh Amendment, Babcock argues that she was denied access to the courts because Cadillac Place is home to state courts. The district court held that Babcock lacked standing to raise such a claim because she did not allege that she sought to observe court proceedings, that her employment required access to the courts, or that she was otherwise denied a concrete opportunity to engage in the judicial process.[8] Babcock does not dispute that she failed to allege any such fact.

---

not satisfy a "general demand" for "safe transportation" in the same way that a sidewalk does; instead, these features are intended for a subset for the general population entering Cadillac Place. Put another way, these design features are not ordinarily "provided in common to all citizens," *id.* at 227, so we are hard-pressed to conclude that they qualify as "services," like sidewalks under the Fifth Circuit majority's approach.

Even accepting the logic of the majority, the design features of a facility like Cadillac Place are distinguishable from sidewalks. While a sidewalk might more reasonably fall within the gray area between a "facility" and "service," the nature of the walls and floors of Cadillac Place are quintessential examples of the features of a facility, *see* 28 C.F.R. § 35.104, as opposed to a service, program, or activity. For the reasons stated by the dissent and outlined above, we find the dissent's interpretation more persuasive.

[6]Babcock does not argue that her employment at the Michigan Economic Development Corporation was a service, program, or activity of a public entity for purposes of Title II. Moreover, her counsel conceded at oral argument that because Babcock no longer works at the MEDC, any argument with respect to access to her employment is moot.

[7]Babcock asserts in her brief that the phrase "or be subjected to discrimination by any such entity" in § 12132 unambiguously shows that a public entity "is in violation of the ADA simply by subjecting a disabled individual to discrimination." But as we explained in *Johnson*, 151 F.3d at 569, "the discrimination referenced in the statute must relate to services, programs, or activities . . . ."

[8]Babcock's access-to-the-courts argument could be interpreted as arguing that she was denied access to a public service, program, or activity (ADA) under the first step of the sovereign immunity analysis or a due process claim (Fourteenth Amendment) for purposes of the second step of the analysis. Regardless, her argument does not

To establish standing, Babcock must meet three requirements: (1) "injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical," (2) causation—a "fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," and (3) "redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks and alterations omitted).

The district court did not err in holding that Babcock lacked standing to argue that she was denied access to the courts. In her complaint, Babcock mentioned only that Cadillac Place was home to "2,000 state employees, government officials' offices, a Workers' Compensation court, and the Michigan Court of Appeals for District I." There is no mention of Babcock's desire to access the courts, not even to observe public proceedings, nor does she now assert such a desire. Put another way, Babcock has not alleged that she has been injured, and thus, she lacks standing to raise this claim.

That Babcock has failed to identify conduct that violates the ADA is dispositive of her claim under the Eleventh Amendment immunity analysis set forth by the Supreme Court. *See Georgia*, 546 U.S. at 159. Without identifying ADA-violating conduct, we cannot hold that Congress abrogated the states' sovereign immunity by a valid exercise of its power under § 5 of the Fourteenth Amendment. And even if we were to proceed to the second step in the analysis—whether the ADA-violating conduct violates the Fourteenth Amendment—Babcock's sole argument is her access-to-the-courts argument detailed above. Because Babcock lacks standing to make such an argument, she has not shown that the alleged conduct violates the Fourteenth Amendment. It is thus barred by Eleventh Amendment sovereign immunity.

Our decision in this case should not be viewed as inconsistent with our court's broad interpretation of the phrase "services, programs, and activities," to "encompass[] virtually everything that a public entity does." *Johnson*, 151 F.3d at 569. What we encounter here is not something that the State of Michigan "does," but rather the facility in which that something is done. It would have been simple for Babcock to have alleged that she wanted to access any

---

overcome Eleventh Amendment sovereign immunity because she has not alleged facts to support that she was denied access to the courts under either step.

number of services, programs, or activities administered in Cadillac Place. But because she has not done so, dismissal is appropriate.

B.

Babcock's remaining claim is for violation of Section 504 of the Rehabilitation Act of 1973. The district court dismissed this claim because the "material defect" in Babcock's ADA claim of failing to identify a service, program, or activity from which she was excluded or denied benefits was also dispositive of her Rehabilitation Act claim, which requires the identification of a "program or activity." Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Our analysis of Rehabilitation Act claims "roughly parallels" ADA claims because the statutes contain similar language and are "quite similar in purpose and scope." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459−60 (6th Cir. 1997).

Babcock advances the same argument for her Rehabilitation Act claim: that denying equal access to a facility is equivalent to denying access to a "program or activity." As with the ADA claim, we disagree. The Rehabilitation Act applies to "program[s] and activit[ies]," which it defines as "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A). The regulations implementing the Rehabilitation Act, like the ADA regulations, differentiate between facilities and programs or activities. *See* 34 C.F.R. § 104.3(i), (k) (defining "facility" as "all or any portion of buildings, structures, equipment, roads, walks, parking lots, or other real or personal property or interest in such property" and "[p]rogram or activity" as the "operations" of a "department, agency, special purpose district, or other instrumentality of a State or of a local government" or the "entity of such State or local government that distribute such assistance . . . ."); 34 C.F.R. § 104.4(b)(5) (prohibiting recipients of federal financial assistance from selecting the "site or location of a facility" that has the "effect of excluding handicapped persons from, denying them the benefits of, or otherwise subjecting them to discrimination under

any program or activity"). These regulations, like the ADA regulations, strongly suggest a dispositive distinction between access to a facility and access to programs or activities.

The reasoning of the en banc dissent in *Frame* also applies to Babcock's Rehabilitation Act claim. *See, e.g.*, *Frame*, 657 F.3d at 241 n.5 (Jolly, J., dissenting in part and concurring in part) ("A sidewalk, which is an inanimate, static piece of concrete, does not constitute an 'operation.' Thus, we can safely conclude that a sidewalk is neither a program nor an activity."). And Babcock's argument that the design defects in Cadillac Place are "services" is even more tenuous under the Rehabilitation Act, which does not expressly extend to "services." *See* 29 U.S.C. § 794(a). Ultimately, for the same reason that Babcock has failed to identify ADA-violating conduct for purposes of overcoming Eleventh Amendment sovereign immunity, Babcock has failed to state a Rehabilitation Act claim.

III.

Finally, we consider whether the district court erred in denying as futile Babcock's oral motion to amend. Ordinarily, we review a district court's denial of a motion to amend for abuse of discretion, but we review it de novo when the district court denies amendment on the grounds that the amendment would be futile. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002).

Babcock's oral motion to amend her complaint, made in the alternative in response to defendants' motion to dismiss, sought to add "individual state agents in their official capacities" to satisfy the *Ex Parte Young* doctrine, which forecloses Eleventh Amendment immunity when an action is brought against a state official and seeks only prospective injunctive relief. *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996). Babcock did not propose to amend the complaint to name a service, program, or activity administered in Cadillac Place from which she was excluded or denied benefits.

The district court found that the proposed amendment would be futile because it would not cure the complaint's "fatal flaw" by identifying a service, program, or activity from which Babcock was excluded or denied benefits. On appeal, Babcock's argument is the same: by alleging unequal access to Cadillac Place, she states a claim for violation of the ADA Title II and the Rehabilitation Act. However, because Babcock has failed to identify ADA-violating

conduct, and has failed to state a Rehabilitation Act claim for the same reason, the district court did not err in denying the motion as futile.

IV.

For these reasons, we affirm the judgment of the district court.

——————————————

**CONCURRENCE**

——————————————

ROGERS, Circuit Judge, concurring.  I concur in the result and in much but not all of the majority's reasoning.

Affirmance is required by an examination of the language of two regulations implementing Title II of the ADA: 28 C.F.R. § 35.150, the regulation that applies to "existing facilities," and 28 C.F.R. § 35.151, the regulation that applies to "new construction and alterations."  Although the existing-facilities regulation does so more strongly, both regulations suggest that—at least where a building or similar structure is involved—a service is something that is housed within the building.  Babcock's claim fails on the basis that Babcock has identified neither what areas of Cadillac Place have been renovated nor what services she intends to access.  This conclusion is required even if the dissenting opinion in *Frame v. City of Arlington*, 657 F.3d 215, 250 (5th Cir. 2011) (en banc) (Jolly, J., dissenting), went too far in concluding that sidewalks do not qualify as services under 42 U.S.C. § 12132 and the implementing regulations.

"Title II's implementing regulations distinguish between newly constructed or altered facilities . . . and existing facilities . . . ."  *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014).  The regulation addressing existing facilities, 28 C.F.R. § 35.150, suggests a difference between services and the buildings that contain services.  As the Supreme Court has recognized, "in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including *relocating services* to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (emphasis added) (citing 28 C.F.R. § 35.150(b)(1)).  The Court's reasoning was based on the existing-facilities regulation, which provides that a public entity is not "[n]ecessarily require[d] . . . to make each of its existing facilities accessible to and usable by individuals with disabilities," as long as the disabled person is still able to access the relevant service, program, or activity. 28 C.F.R. § 35.150(a)(1); *see also id.* § 35.150(b)(1).  This distinction between services and the

buildings that house the services is further illustrated by examples such as the following in the Justice Department's Technical Assistance Manual, which elaborates on the implementation of Title II:

> ILLUSTRATION 1: When a city holds a public meeting in an existing building, it must provide ready access to, and use of, the meeting facilities to individuals with disabilities. The city is not required to make all areas in the building accessible, as long as the meeting room is accessible. Accessible telephones and bathrooms should also be provided where these services are available for use of meeting attendees.

U.S. Dep't of Justice, The Americans with Disabilities Act: Title II Technical Assistance Manual II-5.1000 (1993), *available at* http://www.ada.gov/taman2.html. In sum, the existing-facilities regulation indicates that the design features of an existing building do not qualify as a service.

This conclusion is more difficult to square with the regulation addressing new construction and alterations, 28 C.F.R. § 35.151. That regulation provides that newly built facilities must be "readily accessible to and usable by individuals with disabilities," and that newly altered facilities must satisfy the same standard "to the maximum extent feasible." *Id.* § 35.151(a)(1), (b)(1). The "readily accessible and usable" standard requires a facility to "be designed, constructed, or altered in strict compliance with a design standard." Title II Technical Assistance Manual II-6.1000; *see also Lane*, 541 U.S. at 532 (citing § 35.151(c)). The regulation's "readily accessible and usable" requirement, in addition, extends to the "path of travel" to altered areas. 28 C.F.R. § 35.151(b)(4). The definition of path of travel includes many of the design features in a building, including "walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors, rooms, and other improved areas; parking access aisles; elevators and lifts[; and] restrooms, telephones, and drinking fountains." *Id.* § 35.151(b)(4)(ii)(A)–(B). The regulation thus applies to many of the design features that Babcock identifies. This regulation does not appear to allow relocating services, programs, or activities, instead requiring strict compliance with building specifications when a public entity alters an existing building or constructs a new one.

The statutory and regulatory scheme can hardly be construed such that services and the design features of a building are mutually exclusive for purposes of the regulation addressing

existing facilities, but are not mutually exclusive for purposes of the regulation addressing new construction and alterations.  It follows that services and a building's design features are mutually exclusive even with regard to the new-construction regulation, and that the design features of a building are not services.  Nonetheless, where a public entity remodels a building and triggers the new-construction requirements, § 35.151 appears to prohibit that entity from reassigning the services, programs, and activities within the building to another part of the building or to a different site.  In other words, where § 35.151 applies, the list of services within a building has not necessarily expanded, but the duties imposed on the public entity have.

Babcock's complaint fails to state a claim because she has not alleged what parts of Cadillac Place have undergone renovations that would trigger § 35.151, and she has not identified the services, programs, or activities that she intends to access.  It is true that in *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 913 (6th Cir. 2004), we held that § 35.151 provides a private right of action against defendants who do not comply with that regulation's requirements.  Nothing in this analysis questions that proposition.  In short, Babcock's complaint does not identify any service, program, or activity that 42 U.S.C. § 12132 aims to protect.  Thus, even if § 35.151 requires that certain design features of the building here conform to specific architectural requirements, Babcock's complaint does not state a claim.  On this basis, the majority opinion is correct.

While the majority relies substantially on the reasoning of the *Frame* dissent, the majority in this case carefully notes ways in which the case of sidewalks may be different from the building designs before us.  *Ante*, at 11 n.5.  Our decision today thus does not necessarily control a future case involving sidewalks.  There is some room for the possibility that sidewalks may qualify as services even if the design features of a building do not.  A city's sidewalks are more critical to the everyday transportation needs of the general public than are the design features of a specific building.  The conclusion that sidewalks may qualify as a service is supported by a 2004 decision from this court, a Title II implementing regulation, and the Justice Department's amicus briefs in several sidewalk cases.  Our judgment today does not resolve the question.

First, the *Frame* dissent may be in some tension with *Ability Center*.  We suggested in *Ability Center* that a public entity violates § 35.151 when the entity renovates sidewalks but does

not install curb cuts and ramps in those sidewalks. *Ability Ctr.*, 385 F.3d at 904. Although we did not hold that a sidewalk or curb cut is a service within the meaning of 42 U.S.C. § 12132, we acknowledged that the public entities in that case "d[id] not dispute the district court's finding that they [violated] § 35.151" by failing to install sidewalks throughout the city that were accessible to the disabled. *Ability Ctr.*, 385 F.3d at 904. Nothing in the opinion cast doubt on the fact that a city's failure to properly construct sidewalks violates 28 C.F.R. § 35.151 and 42 U.S.C. § 12132. Also supporting the view that a sidewalk may qualify as a service is a provision in the existing-facilities regulation. That provision states that public entities should "provid[e] curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, *followed by walkways serving other areas*." 28 C.F.R. § 35.150(d)(2) (emphasis added). This provision suggests that a public entity has a duty to install curb ramps in all sidewalks, even if the sidewalk does not serve as a "gateway" to another governmental service, program, or activity. As the Ninth Circuit has put it, "Section 35.150's requirement of curb ramps in *all* pedestrian walkways reveals a general concern for the accessibility of public sidewalks." *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002) (emphasis added). Finally, in two cases addressing the question of whether a sidewalk is a service, the Justice Department has submitted briefs arguing that a sidewalk is a service under 42 U.S.C. § 12132 and the Justice Department regulations. *See* Brief for the United States as Amicus Curiae Supporting Appellants' Petition for Rehearing En Banc, *Frame v. City of Arlington*, 657 F.3d 215 (5th Cir. 2010) (en banc) (No. 08-10630), 2010 WL 5306469; Brief for the United States as Amicus Curiae in Support of Appellants, *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2001) (No. 01-15744), 2001 WL 34095025. The agency's interpretation of its own regulations is entitled to substantial deference. *Woudenberg v. U.S. Dep't of Agric.*, 794 F.3d 595, 601 (6th Cir. 2015).

The Justice Department amicus briefs indicate that there are distinctions between sidewalks and building design features. First, the existing-facilities regulation, 28 C.F.R. § 35.150(d)(2), contemplates that sidewalks may require curb ramps and other sloped areas even if the sidewalks do not lead to a public office or other building. There is no analogous provision regarding design features in a building. More significantly, in characterizing sidewalks as

services, the Justice Department has relied in part on several particular aspects of sidewalks, including the fact that "sidewalks have been used for the purpose of public association and speech," that sidewalks "permit the public . . . to stay clear of road traffic," and that sidewalks permit the public to access shops, businesses, and public transportation. Brief for the United States as Amicus Curiae Supporting Appellants' Petition for Rehearing En Banc, *Frame*, 657 F.3d 215 (No. 08-10630), 2001 WL 34095025 at *4. At least some of these considerations arguably do not apply to design features in a building.