Greenaway, Jr., Circuit Judge, concurring
 

 I join the majority opinion and agree that Title II of the Americans with Disabilities Act (ADA) applies to arrests when the arrestee is "subjected to discrimination" by the police. Maj. Op. at 180 (quoting
 
 42 U.S.C. § 12132
 
 ). However, I would also hold that-based on the text of Title II, the Department of Justice's interpretations of Title II, and the Supreme Court's holding in
 
 Pa. Dep't of Corr. v. Yeskey
 
 ,
 
 524 U.S. 206
 
 ,
 
 118 S.Ct. 1952
 
 ,
 
 141 L.Ed.2d 215
 
 (1998) -that arrests constitute "services, programs, or activities of a public entity" under the ADA.
 
 42 U.S.C. § 12132
 
 .
 
 [1]
 

 I.
 

 As the majority has stated, to successfully state a claim under Title II of the ADA, a plaintiff must,
 
 inter alia
 
 , demonstrate that "[he or she] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity,
 
 or
 
 was subjected to discrimination by any such entity." Maj. Op. at 178 (quoting
 
 Bowers v. Nat'l Collegiate Athletic Ass'n
 
 ,
 
 475 F.3d 524
 
 , 553 n.32 (3d Cir. 2007) ) (emphasis added). However, the majority's holding only allows an arrestee to succeed on an ADA claim if he or she can prove discrimination by a public entity, leaving open the question of whether an arrestee can recover under the ADA for being "denied the benefits of the services, programs, or activities of a public entity."
 
 42 U.S.C. § 12132
 
 . This is significant because "[c]ases charging discrimination are uniquely difficult to prove and often depend upon circumstantial evidence."
 
 Sheridan v. E.I. DuPont de Nemours & Co.
 
 ,
 
 100 F.3d 1061
 
 , 1071 (3d Cir. 1996).
 

 In my estimation, the statutory text of the ADA makes clear that arrests can qualify as a "service[ ], program[ ], or activit[y]" of the police, and I therefore see no reason to hang a cloud of doubt over an arrestee's right to recovery under this alternate theory. Congress declared that the purpose of the ADA was "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."
 
 42 U.S.C. § 12101
 
 (b)(1). "[S]ervices, programs, or activities," is a phrase that Congress intended to be construed consistently with its definition in the precursor to
 the ADA, the Rehabilitation Act of 1973.
 
 42 U.S.C. § 12201
 
 (a) (declaring that Title II is not to "be construed to apply a lesser standard than the standards applied under ... the Rehabilitation Act of 1973");
 
 see also
 

 Bragdon v. Abbott
 
 ,
 
 524 U.S. 624
 
 , 632,
 
 118 S.Ct. 2196
 
 ,
 
 141 L.Ed.2d 540
 
 (1998) (holding that § 12201(a)"requires [courts] to construe the ADA to grant at least as much protection as provided by ... the Rehabilitation Act"). Section 504 of the Rehabilitation Act defines "program or activity" to mean "
 
 all
 
 of the operations" of an entity,
 
 29 U.S.C. § 794
 
 (b) (emphasis added), and we have recognized that "[t]he statutory definition of '[p]rogram or activity' in Section 504 indicates that the terms were intended to be
 
 all-encompassing
 
 ."
 
 Yeskey v. Com. of Pa. Dep't of Corr.
 
 ,
 
 118 F.3d 168
 
 , 170 (3d Cir. 1997) (alterations in original) (emphasis added),
 
 aff'd sub nom.
 

 Yeskey
 
 , 524 U.S. at 213,
 
 118 S.Ct. 1952
 
 . Similarly, our sister circuits have also relied on § 504 to construe "services, programs, or activities" broadly for purposes of Title II.
 

 In
 
 Barden v. City of Sacramento
 
 , for example, the Ninth Circuit explained:
 

 Th[e] broad construction of the phrase, "services, programs, or activities," is supported by the plain language of the Rehabilitation Act ... The legislative history of the ADA similarly supports construing the language generously, providing that Title II "essentially ... simply extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to
 
 all actions of state and local governments.
 
 " H.R.Rep. No. 101-485(II), at 84 (1990),
 
 reprinted in
 
 1990 U.S.C.C.A.N. 303, 367 (emphasis added);
 
 see also
 

 id.
 
 at 151,
 
 reprinted in
 
 1990 U.S.C.C.A.N. 303, 434 ("Title II ... makes
 
 all activities
 
 of State and local governments subject to the types of prohibitions against discrimination ... included in section 504 ....") (emphasis added).
 

 292 F.3d 1073
 
 , 1076-77 (9th Cir. 2002) (first alteration added);
 
 see also
 

 Fortyune v. City of Lomita
 
 ,
 
 766 F.3d 1098
 
 , 1102 (9th Cir. 2014) ("[T]he term 'services, programs, or activities' as used in the ADA is ... broad, bringing within its scope anything a public entity does." (internal quotation marks omitted) );
 
 Babcock v. Michigan
 
 ,
 
 812 F.3d 531
 
 , 540 (6th Cir. 2016) ("[T]he phrase 'services, programs, and activities,' ... 'encompass[es] virtually everything that a public entity does.' " (quoting
 
 Johnson v. City of Saline
 
 ,
 
 151 F.3d 564
 
 , 569 (6th Cir. 1998) ) );
 
 Johnson
 
 ,
 
 151 F.3d at 570
 
 ("[A] broad reading of 'programs, services, and activities' is consistent with the broad definition used in § 504 of the Rehabilitation Act.
 
 This is significant
 
 , because we look to the Rehabilitation Act for guidance in construing similar provisions in the Americans with Disabilities Act." (emphasis added) ). Accordingly, under the clear language of Title II, the terms "services, programs, or activities" regulate arrests independent of the catch-all phrase that prohibits all discrimination by public entities.
 
 [2]
 

 II.
 

 In addition to the plain text, the Department of Justice's interpretations of Title II also provide that arrests are "services,
 programs, or activities of a public entity" under the ADA.
 
 42 U.S.C. § 12132
 
 . Pursuant to its authority to "promulgate regulations" and "render technical assistance" to assist public entities in complying with the ADA, the Department of Justice has interpreted Title II to apply to law enforcement activities, generally, and arrests, specifically.
 
 42 U.S.C. §§ 12134
 
 (a) (authority to promulgate regulation), 12206(c)(1) (authority to render technical assistance). In 2006, the Department issued guidance stating that "[l]aw enforcement agencies are covered by [Title II of the ADA]
 
 because they are programs
 
 of State or local governments," and that Title II "
 
 affects virtually everything
 
 that officers and deputies do," including "
 
 arresting
 
 , booking, and holding suspects." U.S. Dep't of Justice,
 
 Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement
 
 § I (Apr. 4, 2006) (emphasis added).
 
 [3]
 
 The 2006 guidance is consistent with the Department's expansive interpretation of Title II.
 
 See
 
 28 C.F.R. Pt. 35, App. B ("[T]itle II applies to anything a public entity does.").
 

 III.
 

 Lastly, the majority is reluctant to determine whether an arrest qualifies as a service, program, or activity under Title II because-according to it-this is an issue that "courts across the country are divided on ...." Maj. Op. at 180. Two of our sister circuits have addressed this precise issue to date. In
 
 Sheehan v. City and Cty. of S.F.
 
 , the Ninth Circuit held that arrests are covered by Title II because "[t]he ADA applies broadly to police 'services, programs, or activities.' "
 
 743 F.3d 1211
 
 , 1232 (9th Cir. 2014) (quoting
 
 42 U.S.C. § 12132
 
 ),
 
 rev'd in part on other grounds and cert. dismissed in part as improvidently granted
 
 , --- U.S. ----,
 
 135 S.Ct. 1765
 
 ,
 
 191 L.Ed.2d 856
 
 (2015). Conversely, the Fourth Circuit in
 
 Rosen v. Montgomery Cty. Md.
 
 concluded that arrests are not services, programs, or activities because "[t]he terms 'eligible' and 'participate' imply voluntariness on the part of an applicant who seeks a benefit from the State."
 
 121 F.3d 154
 
 , 157 (4th Cir. 1997) (quoting
 
 Torcasio v. Murray
 
 ,
 
 57 F.3d 1340
 
 , 1347 (4th Cir. 1995) ).
 

 The Supreme Court, however, squarely rejected
 
 Rosen
 
 's reasoning in
 
 Yeskey
 
 .
 
 See
 
 524 U.S. at 211,
 
 118 S.Ct. 1952
 
 (rejecting argument "that the words 'eligibility' and 'participation' imply voluntariness on the part of an applicant who seeks a benefit from the State"). Accordingly, "[c]ourts across the country have called
 
 Rosen
 
 's holding into question in light of the Supreme Court's decision in [
 
 Yeskey
 
 ]."
 
 Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.
 
 ,
 
 673 F.3d 333
 
 , 337 (4th Cir. 2012) (collecting cases);
 
 see, e.g.
 
 ,
 
 Thompson v. Davis
 
 ,
 
 295 F.3d 890
 
 , 897 (9th Cir. 2002) ("[
 
 Rosen
 
 's] reasoning has now been discredited by the Supreme Court."). Indeed, in
 
 Seremeth
 
 , the Fourth Circuit declined to rely on
 
 Rosen
 
 and held that Title II applies to police interrogations based on the phrase "services, programs, or activities" in addition to the catch-all antidiscrimination phrase.
 
 673 F.3d at
 
 338-39 ;
 
 id
 
 . at 338 n.2 ("[W]e do not rely on the portion of the district court's decision that depends
 on the 'program or activity' discussion in
 
 Rosen
 
 ").
 

 We therefore need not be troubled by declining to follow
 
 Rosen
 
 and its logic. Rather, we should be cognizant that no court of appeals has held that arrests are not "services, programs, or activities of a public entity,"
 
 42 U.S.C. § 12132
 
 , since the Supreme Court decided
 
 Yeskey
 
 twenty years ago.
 

 IV.
 

 The statutory text, the Department of Justice's interpretations of the text, and the Supreme Court's broad interpretation of the ADA in
 
 Yeskey
 
 establish that arrests are "services, programs, or activities of a public entity" under Title II.
 
 42 U.S.C. § 12132
 
 . I therefore see no reason to be less than plain that an arrestee with a disability has two paths to vindicate his or her disability rights.
 

 In contrast to
 
 Bircoll v. Miami-Dade Cty.
 
 ,
 
 480 F.3d 1072
 
 , 1084 (11th Cir. 2007) -where the Eleventh Circuit declined to decide "whether police conduct during an arrest is a program, service, or activity covered by the ADA" because a plaintiff "could still attempt to show an ADA claim under the final clause in the Title II statute"-the Fourth Circuit's decision in
 
 Seremeth v. Bd. of Cty. Comm'rs Frederick Cty
 
 ., counsels that the Court should reach both clauses in light of
 
 Yeskey
 
 .
 
 673 F.3d 333
 
 , 338 (4th Cir. 2012) ("[I]n light of
 
 Yeskey
 
 's expansive interpretation, the ADA applies to police interrogations
 
 under either test
 
 ." (emphasis added) ).
 

 The Supreme Court has cautioned that the open-endedness of "services, programs, or activities" should not be confused for ambiguity.
 
 See
 

 Yeskey
 
 , 524 U.S. at 212,
 
 118 S.Ct. 1952
 
 ("As we have said before, the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." (internal quotation marks omitted) );
 
 see also
 

 In re Phila. Newspapers, LLC
 
 ,
 
 599 F.3d 298
 
 , 310 (3d Cir. 2010) ("In employing intentionally broad language, Congress avoids the necessity of spelling out in advance every contingency to which a statute could apply.").
 

 This guidance merits at least
 
 Skidmore
 
 deference because it reflects "a body of experience and informed judgment to which courts and litigants may properly resort for guidance."
 
 Skidmore v. Swift & Co.
 
 ,
 
 323 U.S. 134
 
 , 140,
 
 65 S.Ct. 161
 
 ,
 
 89 L.Ed. 124
 
 (1944) ;
 
 see also
 

 Frame v. City of Arlington
 
 ,
 
 657 F.3d 215
 
 , 225 (5th Cir. 2011) ("[B]ecause Congress directed the Department of Justice (DOJ) to elucidate Title II with implementing regulations, DOJ's views at least would warrant respect and might be entitled to even more deference." (internal quotation marks and footnotes omitted) ).